UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 18 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| LYNDA L. MINKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| PAGE COUNTY, VIRGINIA, | ) Civil Action No. 5:18-CV-00082 |
| Defendant. | ) ) ) ) ) |

COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Lynda L. Minke, by counsel, complaining of the Defendant, Page County, Virginia, alleges and says:

NATURE OF THE ACTION

1. The Plaintiff, Lynda L. Minke ("Plaintiff" or "Ms. Minke"), a long time employee of Page County, was fired illegally due to her sex and sex stereotyping, or for retaliatory reasons, through a sham "position elimination" fabricated by Page County although Ms. Minke had consistently been a top performer. Ms. Minke had worked for years as the solid waste manager and landfill director in Page County, a position which had stereotypically been reserved for men who were seen by members of Page County's Board of Supervisors as more appropriate to work around heavy equipment or construction. Plaintiff brings this action for legal and equitable relief to correct and remedy Page County's unlawful, discriminatory, and/or retaliatory employment

practices during the course, and in the termination, of her employment. Plaintiff brings this action to make her whole and compensate her for Page County's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

2. Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e, *et seq.* The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. The unlawful employment practices complained of herein occurred in Page County, Virginia, the employment records relevant to this matter are maintained and administered within the Western District of Virginia, and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) and (c).

## ADMINISTRATIVE PROCEEDINGS

4. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex, hostile work environment and for retaliation on September 18, 2017, a true copy of which is attached hereto and marked Exhibit 1. A Right-to-Sue letter was issued on March 27, 2018.

5. Plaintiff received the Right-to-Sue letter on or around March 28, 2018 and initiated this action within 90 days of the date that she received the Right-to-Sue letter.

6. All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred.

## PARTIES

7. Plaintiff is a 57 year old female. She is a citizen of the United States and a resident of Luray, Page County, Virginia.

8. Defendant Page County, Virginia (hereafter referred to sometimes as "Page County" or "Defendant") is a county in the Commonwealth of Virginia with the power to sue and be sued. Page County maintains a place of business in Luray, Virginia where it transacts its governmental affairs. At all times relevant to the matters alleged herein, Page County employed a County Administrator to whom Page County officially had delegated the responsibility for the administration of the County personnel program, including handling of day to day personnel matters, discipline, managing the workforce and terminations.

9. At all times relevant to the matters alleged herein, Page County has employed approximately 134 employees.

10. At all relevant times, Page County was and is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year.

11. At all relevant times, Page County was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

12. At all times relevant to the matters alleged herein, Defendant Page County's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of the Defendant Page County.

## FACTS

13. Plaintiff worked for the Defendant Page County for a combined total of more than 22 years before she was fired illegally on June 21, 2017. She worked as an office manager at the County's landfill for an outside contractor for approximately one year. Plaintiff then applied for and was hired to return to the County as a part-time

landfill monitor in 2003. Less than one year later, she was promoted to the position of full-time office manager.

14. Over the years, Plaintiff received various increases in her pay and advancements in her positions of employment with the Defendant due to her good performance.

15. Plaintiff obtained certification initially as a Class I Waste Management Facility Operator, and then in 2005, as a Class II Waste Management Facility Operator. These certifications allowed her to operate any of the County's waste management facilities and deal with representatives of the Virginia Department of Environmental Quality ("DEQ") concerning landfill operations, including environmental matters. This was important to Defendant Page County due to environmental problems it had experienced with its landfills.

16. Plaintiff received other promotions and increases in pay with the County and worked her way up to the position of Director of Solid Waste and Recycling by October 2011. As the Director, Plaintiff was responsible for managing the County's two landfills and the two recycling/convenience sites.

17. Defendant Page County employed male operations supervisors from time to time who supervised the male equipment operators. This operations position was referred to as Solid Waste Operations Supervisor ("SWOS").

18. After becoming Director, Plaintiff performed many of the duties of the then-serving male Solid Waste Operations Supervisor ("SWOS"), although she was paid $10,000 less than he was paid. After that male SWOS left the County's employ, Plaintiff

4

served as the acting SWOS during times when the County was unable to keep that position filled.

19. Plaintiff performed her duties in a competent and satisfactory manner during her employment with Page County and at all times relevant to the matters alleged in this Complaint, she met Page County's legitimate expectations.

20. In January 2016, Plaintiff, at the direction of the County Administrator, terminated the male SWOS from his job due to performance problems. Plaintiff again was given the additional SWOS duties and was required to serve again as acting SWOS as well as Director during most of 2016.

21. Rather than hiring someone new for the position, Page County, through the County Administrator, had Plaintiff train one of the landfill equipment operators to be the new SWOS. Later in 2016, that SWOS-in-training employee decided to return to his equipment operator position rather than become SWOS due to insubordination to Plaintiff exhibited by several of the other male employees he would be supervising.

22. Plaintiff was the only female manager working at the landfills or the compactor/recycling sites.

23. Three of the male employees working under Plaintiff's supervision were actively insubordinate towards Plaintiff. Examples of their insubordination was refusing to take, or ignoring, Plaintiff's work instructions and complaining to certain members of the Board of Supervisors rather than going through the proper channels provided for in the County's personnel manual for addressing work issues.

24. The three male employees told members of the Board of Supervisors that they did not like taking orders from a woman. They also communicated their lack of respect for Plaintiff as their boss because of her sex.

25. Some members of the Board of Supervisors, including then Chairman of the Board, Johnny Woodward, allowed and even encouraged these male subordinates to bypass the County's chain of command set forth within its official personnel policies to discuss landfill issues and their desire to avoid working under the direction of a woman.

26. For his part, Johnny Woodward made clear that he did not believe a woman should be making decisions about the landfill, landfill operations, or heavy equipment. Following one Board meeting when Plaintiff made recommendations concerning the purchase of certain equipment for the landfill, Mr. Woodward made statements indicating that a woman had no place making such decisions. Mr. Woodward and another male Board member then engaged in their own equipment search and rejected Plaintiff's sound, well-researched and fiscally responsible recommendation.

27. On June 28, 2016, Plaintiff received an excellent performance evaluation. The evaluation stated in part that "Overall, Lynda does a great job" and "[w]ithout her organization and oversight, the County would probably be in trouble." Plaintiff's performance evaluation noted that Plaintiff was the one to thank for bringing the County into complete compliance with Department of Environmental Quality (DEQ) regulations.

28. In the performance evaluation, Plaintiff was found to have exceeded expectations in many areas, some of which included Leadership, team and personnel development, economy, managing the landfills, communication skills, positive outlook, interpersonal skills and safety practices.

29. In the performance evaluation, Plaintiff further was found to consistently exceed expectations and be consistently exceptional in areas including work ethics, initiative, conformance with policies/procedures/laws, landfill construction projects, including stormwater and leachate, and problem solving, among others.

30. The County Administrator, Amity Moler, informed Plaintiff of the conduct by the male subordinates in complaining to the Board members about not wanting to take orders from a woman. Plaintiff objected to Ms. Moler about this conduct by the male employees which was limiting Plaintiff's ability to perform her job.

31. The conduct continued, and the three male subordinates increased their efforts to have Plaintiff removed as their supervisor due to the fact that she was a woman.

32. Despite Plaintiff's objectively good performance and complaints to Ms. Moler, the discriminatory and gender motivated complaints by three male subordinates of Plaintiff continued. Ms. Moler did not intervene to stop the male employees' insubordinate conduct due to pressure from Board members.

33. By the end of the summer of 2016, Plaintiff had been handling the Director position for approximately five years and working as acting SWOS off and on over the same period during times when the County was unable to keep the SWOS position filled.

34. Plaintiff actually performed or trained men to perform the jobs during significant portions of that five year period, but was not compensated accordingly during most of the period.

35. On September 6, 2016, Ms. Moler informed Plaintiff that her title was going to be changed to Landfill Projects Director, and that Ms. Moler would assume the acting SWOS position until someone could be hired to fill the position.

36. Ms. Moler said that some members of the Board were pushing for this action due to the complaints from the three male subordinates about working for a woman. Plaintiff complained of this apparent submission to subordinate employees' discriminatory demands. Not only were those demands discriminatory, they violated Page County policy and did not go through Plaintiff, Ms. Moler or the human resources department of Page County.

37. Even though Ms. Moler was in charge of and responsible for personnel matters, she feared that the Board would force her to fire Plaintiff.

38. There was no justifiable reason to fire or otherwise discipline Plaintiff. Plaintiff had performed exceptionally well and had the support of the overwhelming majority of the landfill employees, other than the three misogynists.

39. Plaintiff's pay was not reduced.

40. Ms. Moler assured Plaintiff that this action was not a demotion, that Plaintiff should "hang on," and that Ms. Moler would rectify the situation.

41. Despite the change in title, Plaintiff's duties were substantially the same as those she had as Director.

42. Plaintiff continued to be functionally in charge of operations in addition to the duties she had as Director. Ms. Moler was only nominally involved in operations, and continued to hold Plaintiff accountable for performing the responsibilities of the position.

43. There was an upcoming DEQ landfill inspection, and in order to insure a successful inspection, Ms. Moler instructed the landfill employees in writing that Plaintiff was still responsible and that they had to comply with Plaintiff's instructions. These responsibilities of Plaintiff continued after the inspection. Ms. Moler was acting SWOS in name only.

44. The change in title was never formally reflected in Plaintiff's personnel file.

45. Greg Lawrence, one of the three male subordinates who complained to Board members about taking, and refused to take, orders from a woman, was selected as the acting SWOS in November 2016. Despite his selection as SWOS, Ms. Moler never assigned him a County email address, and he retained his personal email for some communications with Ms. Moler.

46. Because he had no Page County email assigned to him, Plaintiff and the landfill office manager were required to email documents on his behalf to assist his communications with Ms. Moler. However, despite her requests, Plaintiff was not given Mr. Lawrence's personal email address to facilitate her communications with him.

47. Plaintiff had evaluated Mr. Lawrence favorably as a senior truck driver earlier in the summer, but his misogynistic conduct became more and more apparent as time went on in 2016. Plaintiff objected to the selection of Mr. Lawrence who she knew to be one of the misogynists who had complained to Board members about working for a woman. In addition to his attitude towards women, he had no supervisory or operations management experience.

9

48. Despite the selection of Mr. Lawrence and Plaintiff's objections to him, Plaintiff indicated that she would, and she did, do everything she could to help him succeed in the job.

49. Mr. Lawrence was incompetent at the job as SWOS, and would not take instruction or assistance from Plaintiff. This conduct resulted in detriment to the County's landfills.

50. Plaintiff continued to perform her job well.

51. On March 20, 2017, Page County announced and introduced at the same time Jeff Blevins as its new Solid Waste Operations Manager ("SWOM"). Mr. Blevins was hired as a working supervisor, meaning that he had equipment operator duties in addition to supervisory duties.

52. With the hiring of Jeff Blevins, Mr. Lawrence was returned to the senior truck driver position, along with a reduction in pay.

53. Ms. Moler explained to Plaintiff that this SWOM position was the same as the SWOS position and that Plaintiff and Mr. Blevins were co-managers. Mr. Blevins had duties that included operation of heavy equipment along with the other operators.

54. Mr. Blevins had no experience working with the type of landfills Page County operated, and Plaintiff was required to train him.

55. Mr. Blevins had lost his job with Washington County, Virginia due to his conviction for solicitation of prostitution in January 2017.

56. The Board was aware of that fact.

57. The fact of Mr. Blevins' conviction of solicitation of prostitution made working with Mr. Blevins very uncomfortable for Plaintiff, but Plaintiff did her job to

assist and train him in the operation of Page County's landfills and other solid waste facilities.

58. As time passed, though, Mr. Blevins began ignoring Plaintiff and took actions detrimental to the County without taking Plaintiff's instructions. An example of this was Plaintiff's instruction to block leachate seeps along the landfill edge at Battlecreek Landfill. Mr. Blevins failed to implement those instructions for at least four weeks, which resulted in environmental problems as well as operation/construction issues for the landfill.

59. In May 2017, the Board of Supervisors approved its budget for the 2017-2018 fiscal year. Plaintiff's position was included in the approved budget for the coming year.

60. Page County handled any position eliminations through the budgetary approval process, not after the budget had been approved.

61. On June 15, 2017, Ms. Moler gave Plaintiff her yearly performance evaluation. This performance evaluation was the official evaluation of Plaintiff's performance on behalf of Defendant Page County.

62. Ms. Moler rated Plaintiff's performance as exceeding expectations and Plaintiff received a raise.

63. Some of the many areas in which Plaintiff was found to exceed expectations included communicating appropriately, accepting criticism, cooperativeness, leadership, positive outlook, team and personal development, work quality, safety practices (the extent to which the employee routinely conforms to established safety practices and experiences no work related injuries or damages) and problem solving.

64. The performance evaluation rated Plaintiff's performance as consistently exceeding expectations, and being consistently exceptional, in a number of areas, some of which include initiative, work ethics, work quantity and "conformance with policies/procedures/laws" defined as "[t]he extent to which the employee is knowledgeable of and conforms to applicable policies and procedures."

65. On June 20, 2017, the Board of Supervisors met in a closed session and discussed Plaintiff's performance.

66. After discussing Plaintiff's performance in closed session, the Board of Supervisors reconvened in open session and voted to terminate Plaintiff's employment.

67. On June 21, 2017, Plaintiff was approached at the landfill offices by the Assistant County Administrator and Major Baker from the Sheriff's Office. Plaintiff's employment was summarily terminated at that meeting.

68. Plaintiff was told when she was fired, and again when she picked up her paystub after the firing, that the termination had nothing to do with performance or conduct.

69. The Assistant County Administrator advised Plaintiff that her position with the County had been eliminated at the Board of Supervisors' meeting the night before, and that Plaintiff was to turn in her County property in her possession and leave the premises immediately.

70. In its Position Statement submitted to the EEOC, Defendant Page County changed its story in its conclusion, and stated that "[a]ll actions taken by Employer [Page County] were based on Employee's [Plaintiff'] actions and job performance"…and "all

actions taken by Employer were based on Employee's job performance and Employer's need to maintain Employee's position."

71. As Plaintiff's supervisor, the County Administrator was responsible for any personnel actions regarding Plaintiff, including initiating any disciplinary action or taking any action regarding a layoff.

72. The County Attorney had instructed the Board of Supervisors that, pursuant to the official policy, the Board of Supervisors was not to get involved in personnel matters because that was the responsibility of the County Administrator. The Board of Supervisors ignored the County Attorney and violated its own policies in terminating Plaintiff's employment.

73. The County Administrator did not initiate any disciplinary or layoff action regarding Plaintiff's employment, and in fact had just evaluated Plaintiff's performance highly only six days before she was fired.

74. Plaintiff was humiliated by having Major Baker escort her out of the premises like a common thief in front of her subordinates despite her excellent performance. Other terminations were not handled in this manner.

75. Page County's contention that there was a position elimination was false and pretextual. The County has claimed in its Position Statement submitted to the EEOC that the termination was done "based on Employee's job performance and Employer's need to maintain Employee's position."

76. Plaintiff's duties remained following her firing. There was no position elimination.

77. Mr. Blevins assumed the significant duties Plaintiff had performed for Page County.

78. After firing Plaintiff, Page County hired additional employees in the solid waste department to relieve Mr. Blevins of portions of his duties, including his hands-on equipment operator duties, in order to allow Mr. Blevins to take over Plaintiff's job.

79. Page County admittedly needed Plaintiff's position, and it had no valid performance reason on which to base a termination of Plaintiff's employment. Its action was taken in an effort to cover up its discriminatory and/or retaliatory course of action.

80. Page County has a policy granting sole discretion to the County Administrator to pay severance to a full-time employee such as Plaintiff based on years of service if there was a layoff. Plaintiff was eligible to receive and requested such severance in accordance with her years of service. The Board of Supervisors, though, rejected Plaintiff's request and directed the County Administrator not to pay Plaintiff severance, thereby circumventing the County Administrator's discretion for discriminatory and/or retaliatory reasons.

81. As a result of Defendant Page County's actions, Plaintiff has suffered loss of employment, past and future loss income and past and future loss of benefits.

82. As a result of Defendant Page County's actions, Plaintiff has suffered severe emotional distress, humiliation, embarrassment, loss of enjoyment of life, injury to her reputation, anxiety and depression, and other loss and damage.

## COUNT I

### Discrimination on the Basis of Sex/Gender in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

83. Plaintiff incorporates and relies upon the allegations stated in paragraphs 1 - 82 of the Complaint as if the same were fully restated in Count I.

84. Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f), at all times relevant to the matters alleged herein.

85. Defendant Page County was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), at all times relevant to the matters alleged herein.

86. Defendant Page County discriminated against Plaintiff because of her sex with respect to the terms and conditions of her employment in violation of Title VII, including by creating and perpetuating a hostile work environment based on sex, subjecting her to unlawful and discriminatory treatment based on sex and sex stereotyping, and terminating her employment based on sex.

87. Throughout Plaintiff's employment, Defendant discriminated against Plaintiff because of sex by allowing male subordinate employees to refuse to take direction and instruction from her even though she was their supervisor, and to engage in and other behaviors that are demeaning and discriminatory toward women, which created and perpetuated a sexually or gender-based hostile work environment.

88. Plaintiff objected to this conduct to the County Administrator. She was told to hang on and that it would be rectified.

89. The conduct tolerated and engaged in by Defendant Page County was subjectively intolerable to Plaintiff and would have been objectively intolerable to a

reasonable person had they been in Plaintiff's circumstances. Moreover, the conduct to which Plaintiff was subjected was severe or pervasive. Defendant Page County acquiesced in and ratified conduct that allowed male subordinates to refuse to work for Plaintiff because of sex, and materially altered the terms and conditions of Plaintiff's employment.

90. During Plaintiff's employment, Defendant Page County discriminated against Plaintiff because of sex by dismissing Plaintiff's complaints about male employees' insubordinate behavior, and using that blatantly misogynistic behavior against Plaintiff and as a reason for the termination of Plaintiff's employment, and assignment of her job to Jeff Blevins on June 21, 2017.

91. Defendant Page County applied policies to Plaintiff that it did not apply to male employees. Male employees, who engaged in outright insubordinate conduct were not fired or otherwise disciplined, remained employed and received promotions. In contrast, Plaintiff, who was performing her job at an objectively high level, was terminated.

92. Defendant Page County terminated Plaintiff's employment because of sex, which it tried to cover up with pretextual reasons. Those reasons included false and changing reasons for the termination.

93. In addition to other pretextual reasons for the termination of Plaintiff's employment, Defendant Page County contended that Plaintiff had endangered employees' safety by requiring employees to go into a "confined space" to pump leachate from a leachate vault or to take gas readings. These allegations made well after the termination of Plaintiff's employment were demonstrably false. Plaintiff never engaged

in safety violations of any kind, as confirmed by her evaluation just five days before she was fired. In fact, Plaintiff's insistence on safety was one of the things to which the three male misogynists had objected.

94. Defendant's conduct was disparate, intentional, deliberate, and willful.

95. As a result of Defendant Page County's discrimination based on sex, Plaintiff has suffered emotional and economic harm.

96. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.*, including, but not limited to, declaratory and injunctive relief, back pay, front pay, compensatory damages, reinstatement into a position she would be holding but for Defendant's discriminatory conduct, and any other legal or equitable relief as the Court deems appropriate.

## **COUNT II**

### **Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.**

97. Plaintiff incorporates and relies upon the allegations stated in paragraphs 1 - 96 of the Complaint as if the same were fully restated in Count II.

98. Plaintiff complained in 2016 of the conduct to which she was being subjected regarding the male employees who were being insubordinate and who did not want to work for a woman, as well as the male employees being allowed to go directly to Board members with their discriminatory complaints.

99. Plaintiff engaged in protected oppositional activity which was well founded. The County Administrator herself told the Plaintiff that Plaintiff should sue Mr.

Woodward when he was allowing the male subordinates to complain about working for a woman. Ms. Moler told Plaintiff that she would be a witness for the Plaintiff.

100. Plaintiff was subjected to a retaliatory hostile work environment which was objectively intolerable and would have been objectively intolerable to a reasonable person required to work under the same circumstances as Plaintiff. The conduct engaged in and tolerated by Page County was severe or pervasive and lasted through the end of Plaintiff's employment and resulted in termination of Plaintiff's employment.

101. Defendant Page County terminated Plaintiff's employment in retaliation for Plaintiff's objections and opposition to Page County's violations of Title VII, which Page County tried to cover up with pretextual reasons. Those reasons included false and changing reasons for the termination.

102. As a result of Defendant Page County's retaliatory conduct, Plaintiff has suffered emotional and economic harm and was terminated from her employment.

103. By reason of Defendant's retaliatory conduct, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.*, including, but not limited to, declaratory and injunctive relief, back pay, front pay, compensatory damages, reinstatement into a position she would be holding but for Defendant's retaliatory conduct, and any other legal or equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Lynda L. Minke demands judgment against Defendant Page County, Virginia as follows:

(a) For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*;

(b) For an order reinstating Plaintiff to her position as Landfill Director or in a position with comparable duties and responsibilities and with equal pay and benefits as Plaintiff would have received but for the Defendant's conduct in violation of Title VII, and reinstating all benefits to which Plaintiff would have been entitled but for the illegal termination of her employment, or in the alternative, in the event it is determined that the reinstatement is not feasible or would subject Plaintiff to hostility, for an award of front pay and future benefits;

(c) For a permanent injunction enjoining the Defendant Page County from any conduct violating Plaintiff's rights as secured by the Title VII;

(d) For an award of back pay, prejudgment interest, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost;

(e) For an award of compensatory damages under Title VII in an amount to be determined by the jury at trial;

(f) For an award of attorneys' fees and costs incurred in this action, together with expert witness fees and expenses;

(g) For an award in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(h) For an award of pre- and post-judgment interest on any monetary award; and

(i) For any other relief this Court deems to be just and proper.


                                LYNDA L. MINKE
                                By: s/Timothy E. Cupp
                                    Counsel

Timothy E. Cupp, VSB No. 23017
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
(540)432-9988
(804)278-9634 (facsimile)
E-mail: cupp@scs-work.com

Tim Schulte, VSB No. 41881
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, Virginia 23220
(804)644-9700
(804)278-9634
Shelley@scs-work.com
Counsel for Plaintiff

## DEMAND FOR JURY TRIAL:

The Plaintiff, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action, this 18th day of June, 2018.

s/Timothy E. Cupp<br>
Timothy E. Cupp, VSB No. 23017<br>
Counsel for Plaintiff