IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| LYNDA L. MINKE, | ) | |
|     Plaintiff, | ) | Civil Action No. 5:18-cv-00082 |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION & ORDER</u> |
| | ) | |
| PAGE COUNTY, VIRGINIA, | ) | By:   Joel C. Hoppe |
|     Defendant. | ) |         United States Magistrate Judge |

Before the Court are three discovery motions: Third Party Amity Moler's and Defendant Page County, Virginia's motion to quash subpoena ("Motion to Quash"), ECF No. 37, and Plaintiff Lynda L. Minke's motion to compel production of personnel records, ECF No. 46, and motion to compel interrogatory responses, ECF No. 47. The Court held a hearing on the record by conference call, and the parties appeared by counsel.

As brief background, Minke worked for many years as the solid waste manager and landfill director for Page County. In 2016, Minke's supervisory duties were removed. On June 20, 2017, the Page County Board of Supervisors voted to eliminate Minke's position, and she was terminated. Minke alleges that her termination was impermissibly based on gender discrimination and retaliation. Page County asserts that Minke was a poor supervisor and manager and that she had mistreated numerous subordinates, causing them to quit their jobs.

I.    Moler's and Page County's Motion to Quash

Moler is the County Administrator for Page County. Minke issued a third-party subpoena to Moler for various documents. ECF No. 39-1. Moler and Page County moved to quash the subpoena under Rules 26 and 45 of the Federal Rules of Civil Procedure, arguing that the subpoena seeks irrelevant, privileged, or nonexistent information. Mot. to Quash 1.

1

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 45(a), a party may serve on a non-party to the litigation a subpoena for the production of discoverable material in the non-party's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii); *In re Subpoena of Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) (per curiam). The scope of discovery from a non-party is "'the same as the scope of a discovery request made upon a party to the action,' and 'a party is entitled to information that is relevant to a claim or defense in the matter' at issue." *Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (quoting *Smith v. United Salt Corp.*, No. 1:08cv53, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009)); *see also Brown v. Mountainview Cutters, LLC*, No. 7:15cv204, 2016 WL 3045349, at *3 (W.D. Va. May 27, 2016) ("The scope of discovery allowed under a [Rule 45] subpoena is the same as the scope of discovery allowed under Rule 26.").

A. Topics 1 through 4

Minke requests that Moler produce the job application, cover letter, and résumé that Moler submitted in January 2015 for the County Administrator position as well as her résumé from her personal computer. Counsel for Moler and Page County represents that she and her clients conducted a reasonable search, that they produced some documents, and that no additional responsive documents exist. This response is sufficient, but, as Minke requests, Moler must provide a response in writing stating that no additional documents exist.

B. Topics 5 and 6

Minke requests all documents and communications, including electronically stored information, created since January 1, 2016, related to Minke, her employment by Page County,

her work performance, her lawsuit against Page County, and the elimination of her position. Moler and Page County respond that Moler's work computer and email account have been searched and responsive documents provided. They object, however, to searching Moler's personal cell phone and computer. Counsel for Moler and Page County represented that Moler did not use her personal computer for any work-related matters, but she did use her personal cell phone. Thus, it is likely that Moler's cell phone contains work-related communications and information that may be relevant to the issues in this case. Indeed, Moler and Page County concede that Moler communicated by text message with Pamela Emmons, who was not employed by Page County, about Minke's job performance and matters at the landfills. Accordingly, Moler must produce responsive documents, as discussed below, that are stored on applications or accounts on her personal cell phone.

Moler and Page County also object to the scope of the requests as overbroad in time and that they cover all events at the landfills. Minke's requests are somewhat overbroad. She has offered a reasonable approximation of the beginning date—January 1, 2016—for the events at issue in this lawsuit. The problem with her date range is the indefinite end date. Minke has not offered a persuasive reason to show that events at the landfills occurring after she was terminated have any bearing on this case, and I can find no reason to support the expansive timeframe she proposes. Thus, to be relevant, documents or communications must relate to actions that occurred on or before Minke's termination on June 21, 2017. Relevant documents may have been created after June 21, 2017, but they must discuss actions that occurred during the period from January 1, 2016, to June 21, 2017.

The subject matter of Minke's requests is, for the most part, tailored to obtain relevant information. Documents about Minke, her job performance, and the elimination of her position

3

are plainly relevant. Not every document or communication about the operation of the landfill, however, is relevant. That subject must be limited to documents or communications related to the management of the landfills and overall performance of operations at the landfills, i.e. whether there were problems or whether things at the landfills were going well. As a manager of the landfills, Minke's individual performance would have some correlation to the overall operational performance of the landfills.

Thus, as to Topics 5 and 6, Moler must produce all documents and communications relating to Minke's employment by Page County and her job performance, the performance of landfill operations, and the elimination of Minke's position from January 1, 2016, to June 21, 2017. Such documents related to significant issues in the case, and their importance to Minke outweighs the burden placed on Moler and Page County in producing them. Moreover, the search for electronically stored information is common in litigation and not overly burdensome. Moler must also produce documents about the lawsuit, but may withhold privileged communications identified in a privilege log.

C. Topics 7 and 8

Minke seeks communications between Moler and six individuals relating to work, work performance, or management issues at the landfills. The Court finds that the scope for Topics 5 and 6, as set forth above, is also appropriate for Topics 7 and 8. Any significant work performance issues for these six individuals that relate to Minke are likely to be in their personnel files and should be disclosed as discussed below.

D. Topic 9

Minke requests all communications and electronically stored information from March 1, 2017, to June 30, 2017, between Moler and Pamela Emmons relating to Minke, her job

performance, the elimination of her position, and work at the landfills. Moler and Page County respond that they have provided a text message exchange between Moler and Emmons relating to Emmons's request for a meeting in June 2017 to discuss her concerns about Minke's performance. Emmons was an outside contractor for Page County, and Minke notes that contractors were constructing a new cell at one of the landfills during the period from March to June 2017. It seems likely that Emmons's professed concerns about Minke developed over some time, and Minke's request for communications during a four-month period is a reasonable approximation of events or things that may have given rise to those concerns. Communication of any such information to Moler may be relevant to the decision to eliminate Minke's position. As with Topics 5 though 8, the scope of work at the landfills should be narrowed to the overall performance of operations at the landfills. Thus, Moler shall produce all communications and electronically stored information from March 1, 2017, to June 21, 2017, between Moler and Emmons relating to Minke, her job performance, the elimination of her position, and the overall performance of operations at the landfills.

  E. Topic 10

Moler and Page County represented that all responsive documents had been produced by Page County, and Minke accepted that representation.

II. Personnel Files

In its second supplemental initial disclosures, Page County identified twenty-eight individuals who have information about Minke's work performance issues, complaints about her, and her poor treatment of co-workers. *See* ECF No. 46-1, at 1–8. Minke moves to compel Page County to produce the entire personnel file of any of these twenty-eight individuals who Defendant contends "will testify about [Minke's] performance problems" as well as eleven other

named individuals,[1] all of whom also are among the witnesses identified in Page County's initial disclosures. ECF No. 46-3, at 1–2. Although Minke requested the entire personnel file, she has since narrowed her request and clarified that she seeks health information only for Melissa Higginbotham, but not the others, and she does not seek tax information for any of these potential witnesses. Page County objects that the request is overbroad and invades the privacy interests of these individuals.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The rules of discovery are "to be accorded broad and liberal construction." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). "Personnel files are discoverable only in limited circumstances given that personal privacy and accurate, employee evaluations are important public policy concerns." *EEOC v. McCormick & Schmick's Seafood Rests.*, No. 11-2695, 2012 WL 3563877, at *4 (D. Md. Aug. 16, 2012) (internal quotation marks omitted). Material in personnel files may be discoverable if it is relevant to the claims and defenses in a case and the court balances the non-party employee's privacy interests with the requesting party's need for the material. *See Kirkpatrick v. Raleigh Cty. Bd. of Educ.*, No. 95-2491, 1996 WL 85122, at *2 (4th Cir. Feb. 6, 1996); *Marlow v. Chesterfield Cty. Sch. Bd.*, No. 3:10cv18, 2010 WL 3660770, at *5 (E.D. Va. Sept. 15, 2010).

First, for a requesting party to obtain information in a non-party's personnel file, the information must be relevant to some issue in the case. Considering the claims and defenses in this case, information in a non-party's employment file may be relevant if it is related to Minke's work performance; her supervision of others, including disciplinary action she initiated or had

---

[1] The eleven individuals are Mark Lauzier, James Hilliard, Eric Knight, Bruce Gray, Eric Cubbage, Melissa Higginbotham, James Frazier, Walter Buster Stanley, Travis Addison, Tobey Longanecker, and Mike Foltz.

6

some involvement in; and information that an employee left his or her employment at Page County, voluntarily or by termination, or discussed doing so because of Minke, during the period of January 1, 2016, to June 21, 2017. Information about Minke's conduct or the effect of her conduct on others that occurred before 2016 may also be relevant if Page County intends to introduce evidence about it. Information that falls within this scope may be documented in various forms such as performance evaluations, disciplinary actions, and employee grievances. This information is potentially relevant to Minke's job performance and her co-workers' abilities to work with her, which are central issues in this case. Thus, Minke has shown a significant need for the information, and that need outweighs the non-party employees' privacy concerns so long as the information is produced under the protective order entered in this case. *See Armitage v. Biogen, Inc.*, No. 1:17cv1133, 2019 WL 79037, at *5 (M.D.N.C. Jan. 2, 2019).

Some additional information about specific employees is also relevant. Page County has identified Melissa Higginbotham as a former employee who reported concerns about Minke's conduct in 2014. Defendant asserts that Higginbotham's health was adversely affected by her interactions with Minke, and Higginbotham filed a grievance related to her problems with Minke. The full scope of Higginbotham's complaints about Minke are thus at issue in the case. While medical information is particularly sensitive, *McCormick & Schmick's*, 2012 WL 3563877, at *5, Page County apparently intends to defend against Minke's discrimination claims by relying on Higginbotham's contentions that Minke's workplace conduct harmed her health. Minke is entitled to all relevant information to oppose these contentions. Page County must produce all information from Higginbotham's personnel file relating to Minke and Higginbotham's grievance against her, as well as Higginbotham's medical information from 2010 to 2014.

Amity Moler was a decision-maker in the elimination of Minke's position. Some courts have allowed discovery of decision-makers' personnel files, *see McCormick & Schmick's*, 2012 WL 3563877, at *6; *Eckhardt v. Bank of Am.*, No. 3:06cv512, 2008 WL 111219, at *7 (W.D.N.C. Jan. 9, 2008), as Minke requests. I cannot agree with Minke, however, that Moler's entire personnel file is relevant to the issues in this case or that Minke's need for the file outweighs Moler's privacy interests. Personnel files may contain large amounts of personal information, and Minke has not shown that every part of Moler's file is likely to contain relevant information. Nonetheless, some additional parts of Moler's personnel file may be relevant, such as information related to performance issues about the operation of the landfills from January 1, 2016, to June 21, 2017, and any information about past allegations or instances of discrimination leveled against Moler. *See Marlow*, 2010 WL 3660770, at *5.

Minke identifies Jeff Blevins as a potential comparator. An alleged comparator's qualifications are potentially relevant and discoverable in employment-discrimination cases. *Armitage*, 2019 WL 79037, at *5; *Marlow*, 2010 WL 3660770, at *5. Page County asserts that it has already produced Blevins's résumé and his job description and duties. This production is insufficient. Blevins's entire application packet surely contains additional information about his qualifications. Additionally, any evaluations or performance appraisals that preceded Minke's termination are also relevant.

Although Minke seeks additional information, production of documents from personnel files beyond the scope of the categories identified above as relevant to a specific issue in the case is not warranted, primarily because Minke has not shown a particularized need for the information. In *Marlow*, the plaintiff, seeking information solely for impeachment purposes, requested discovery of personnel files for all witnesses identified in the defendant's Rule 26

initial disclosures. 2010 WL 3660770, at *6. Judge Dohnal recognized that some courts had allowed such discovery, but he found that the plaintiff had failed to "articulate any specific parameters of impeachment evidence." *Id.* (applying *Kirkpatrick*, 1996 WL 85122). Thus, plaintiff had not shown a particular need for the possibly impeaching information, and her need for this information did not outweigh the other "employees' legitimate privacy interests." *Id.* at 6.

I agree with Judge Dohnal's application of *Kirkpatrick*. To obtain a personnel file for impeachment purposes, the requesting party must show that particular information in that file may be relevant to an issue in the case, and the court then must balance the employee's privacy interests with the requesting party's need for the information. In this case, Minke has requested general access to the personnel files of the twenty-eight potential witnesses. Absent a showing that particular information has some bearing on an issue in the case or is likely to produce impeaching evidence, I find that the employee's privacy interests outweigh Minke's need for the information.

Within fourteen (14) days, Page County shall produce documents related to Minke's work performance; her supervision of others, including disciplinary action she initiated or had some involvement in; and information that an employee left his or her employment at Page County, voluntarily or by termination, or discussed doing so because of Minke, during the period from January 1, 2016, to June 21, 2017, from the personnel files for any of the individuals identified in Defendant's second supplemental initial disclosures. Page County must also produce the information discussed above from Higginbotham's, Moler's, and Blevins's personnel files. Additionally, if Page County intends to rely on information about Minke's conduct or the effect of her conduct on others that occurred before 2016, it must produce such

9

information from the individual's personnel file. Any information produced from a personnel file shall be subject to the protective order entered in this case, which I find will adequately protect the employees' privacy interests in the information that the Court has found to be otherwise discoverable. *See Armitage*, 2019 WL 79037, at *5. Defendant need not, however, produce entire personnel files.

Lastly, in Interrogatory No. 8, Minke requests, "[f]or each person identified in your Rule 26(a)(1) initial disclosures, state the substance of the knowledge of each person on whom you intend on relying to support your denials or defenses in this case." ECF No. 46-4 at 2. This request is more proper for a deposition; thus, Defendant's objection to responding to the interrogatory is sustained.

III.  Interrogatories

Minke moved to compel Page County to respond to Interrogatories 1, 2, and 3 from her third set of interrogatories. ECF No. 47. Page County contends its responses are adequate.

In Interrogatories 1 and 3, Minke asks Page County to describe the alleged turmoil caused by Minke's inability to interact with subordinates and to identify instances where Minke came across as condescending. ECF No. 47-1. Page County responded to Interrogatories 1 and 3 with objections and by asserting that the instances of turmoil and condescending behavior were detailed in Minke's personnel file and Moler's deposition testimony.

A party may produce business records as its response to an interrogatory where the answer may be determined by examining the records and the burden on either party would be substantially the same. Fed. R. Civ. P. 33(d). The responding party must specify business "records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). If challenged,

10

the producing party must show that the documents actually contain all of the information requested in the interrogatories. *U.S. Sec. & Exch. Comm'n v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). "Crucial to this inquiry is that the producing party have adequately and precisely specified[,] for each interrogatory, the actual documents where information will be found." *Id.*

Page County's responses to Interrogatories 1 and 3 refer generally to Moler's deposition transcript and to categories of documents in Minke's personnel file. A deposition transcript is not a business record. Thus, Page County may not satisfy its obligation to respond to an interrogatory by referring to a deposition transcript. *See Elfindepan*, 206 F.R.D. at 577–78. Moreover, Page County did not identify any specific documents in Minke's personnel file. Although a single personnel file cannot fairly be described as a "document dump," Defendant's responses nonetheless are impermissibly vague and lack the specificity required under Rule 33(d) because they do not precisely identify "the actual documents where information will be found." *Id.* at 576. Additionally, unless Page County can identify documents from Minke's personnel file that describe every instance it relies upon to show that she acted condescendingly or caused turmoil, then Page County's use of Rule 33(d) will not provide a sufficient answer to Minke's interrogatories. I will not preclude Page County from again responding under Rule 33(d), but whatever means it choses, its response must be complete and specific. Page County shall respond to Interrogatories 1 and 3 within fourteen (14) days.

In Interrogatory 2, Minke asks for a description of "the cost of time and money" that Defendant attributes to dealing with turmoil created by Minke. ECF No. 47-1, at 1. Minke explains that this interrogatory arose from Defendant's response to an earlier interrogatory that the "turmoil . . . was costing [Page] County too much time and money." ECF No. 25-4, at 4; Pl.'s

11

Third Mot. to Compel Disc. 6, ECF No. 47. Page County responded to Interrogatory 2 with objections, but also answered that it had not kept track of this information. Defendant's sworn statement acknowledging that it has no information to quantify the purported lost time and money is an adequate response to the interrogatory. Accordingly, no further response is required.

For the foregoing reasons, each of the motions, ECF Nos. 37, 46, 47, is GRANTED IN PART and DENIED IN PART.

It is so ORDERED.

ENTERED: June 7, 2019

Joel C. Hoppe
United States Magistrate Judge