CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 9 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

LYNDA L. MINKE,         )
                                 )
      Plaintiff,          )
                                 )  Civil Action No. 5:18-cv-82
v.                             )
                                 )
PAGE COUNTY, VIRGINIA,  )
                                 )
      Defendant.       )  By:  Michael F. Urbanski
                                 )       Chief United States District Judge

## MEMORANDUM OPINION

This matter comes before the court on Defendant Page County, Virginia ("County")

and County Administrator Amity Moler's ("Moler") various objections, ECF No. 61, to and

partial appeal of United States Magistrate Judge, Joel C. Hoppe's order, ECF No. 59, of June

7, 2019, brought pursuant to Rule 72 of the Federal Rules of Civil Procedure. This case arises

from the diminution in supervisory duties in 2016 and later termination in June 2017 of Lynda

L. Minke as the solid waste manager and landfill director for Page County, Virginia. Minke

alleges that her termination was impermissibly based on gender discrimination and retaliation.

The County asserts that Minke was a poor supervisor and manager who mistreated numerous

subordinates, causing them to walk off the job or otherwise quit. On June 7, 2019, Judge

Hoppe ruled on three discovery motions: (1) Third Party Amity Moler and Defendant's

Motion to Quash Subpoena, ECF No. 37; (2) Plaintiff's Motion to Compel Production of

Certain Personnel Records, ECF No. 46; and (3) Plaintiff's Motion to Compel Interrogatory

Responses to Three Interrogatories, ECF No. 47. The County and Moler jointly object to

portions of Judge Hoppe's rulings with respect to the (1) Motion to Quash Subpoena, ECF

No. 37, and the County objects to a portion of the ruling on the (2) Motion to Compel Production of Certain Personnel Records, ECF No. 46.

## I.

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on nondispositive matters, such as discovery orders. Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). As a non-dispositive matter, the review of a magistrate judge's discovery order is governed by the "clearly erroneous" or "contrary to law" standard of review. Id. Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision. Id. A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see also Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985). "In light of the broad discretion given to a magistrate judge in the resolution of nondispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused." Shoop v. Hott, 2010 WL 5067567, *2 (N.D.W.Va. Dec. 6, 2010) (citing Detection Sys., Inc. v. Pittway Corp., 96 F.R.D. 152, 154 (W.D.N.Y. 1982)).

## A.

There are three major objections to Judge Hoppe's rulings, each of which the court will address in turn. The first major objection is related to Judge Hoppe's rulings on Topics 5 and 6, as well as Topics 7 and 8 of the County and Moler's Motion to Quash, ECF No. 37, Minke's subpoena, see ECF No. 39-1, at 1-4. In Topics 5 and 6 of Minke's subpoena, she requested

all documents and communications, including electronically stored information, created since January 1, 2016, related to Minke, her employment by the County, her work performance, her lawsuit against the County, and the "elimination of positions." ECF No. 59, at 2-3. With respect to Topics 7 and 8, Minke requested "communications between Moler and six individuals relating to work, work performance, or management issues at the landfills" created since January 1, 2016. Id. at 4. Judge Hoppe held that Minke's discovery requests as to Topics 5-8 were "somewhat overbroad" in that they did not specify an end date. Id. at 3. To correct for this deficiency, Judge Hoppe held that "to be relevant, documents or communications must relate to actions that occurred on or before Minke's termination on June 21, 2017." Id. at 3. Minke's requests were narrowed temporally to this extent.

More importantly, Judge Hoppe rejected the County's objection as to the relevancy of Minke's requests in Topics 5-8, holding that the "subject matter of Minke's requests [as to Topics 5-8] is, for the most part, tailored to obtain relevant information." Id. Judge Hoppe noted that "[a]s a manager of the landfills, Minke's individual performance would have some correlation to the overall operational performance of the landfills." Id. at 4. Judge Hoppe held that as to Topics 5 and 6, Moler must produce all documents and communications relating to Minke's employment by the County and her job performance, the performance of landfill operations, and the elimination of Minke's position from January 1, 2016, to June 21, 2017. Id. Judge Hoppe noted, however, that:

> [although] [d]ocuments about Minke, her job performance, and the elimination of her position are plainly relevant . . . [n]ot every document or communication about the operation of the landfill, . . . is relevant. That subject must be limited to documents or communications related to the management of the landfills and overall performance of operations at the landfills, i.e., whether

there were problems or whether things at the landfills were going
well.

Id. at 4. Judge Hoppe held that such documents related to significant issues in the case, and their importance to Minke outweighs the burden placed on Moler and the County in producing them given that searching electronically stored information is "common in litigation." Id. Judge Hoppe also indicated that "Moler must . . . produce documents about the lawsuit, but may withhold privileged communications identified in a privilege log." Id.[1]

The County and Moler object to Judge Hoppe's rulings as to Topics 5-8 to the extent they require Moler to search her personal cell phone[2] and furnish all text messages or documents in applications on her phone from January 1, 2016 to June 21, 2017, which relate "in any way" to Minke or the performance of landfill operations. ECF No. 61, at 1. Their argument, distilled to its essence, is that this information is irrelevant because neither the County nor Moler "have ever taken the position that Minke did not operate the landfill well, from a technical standpoint." Id. at 1. Instead, Minke's termination was due to her "lack of interpersonal skills," i.e., her "poor ability to supervise and work with employees and others," rather than technical mismanagement of the landfills. Id. at 2. Thus, because information related to the overall performance of the landfills is not germane to this case, requiring Moler to "search and produce every communication for a period of eighteen months that have anything at all to do with operation of the landfill far exceeds what is reasonable or proportional to the needs of this case." Id. The County also contends that compliance with

---

[1] Judge Hoppe concluded that the scope for Topics 5 and 6, as set forth above, is also appropriate for Topics 7 and 8, and as such, any significant work performance issues for the six individuals in question that relate to Minke should be disclosed.

[2] It is undisputed that Moller conducted County business on and communicated about the operation of the landfill and employment issues at the landfill on her personal cellphone.

Judge Hoppe's order "would also potentially result in disclosure of proprietary or sensitive information about the operations of the landfill and relationships with outside contractors, none of which bears on this case to any degree." Id.

To be clear, although the County and Moler "take issue" with other portions of Judge Hoppe's rulings vis-à-vis Topics 5-8 which require Moler to search her personal cellphone and release information pertaining to Minke's job performance, elimination of her position, and this lawsuit, they nevertheless indicated their intent to comply with the order as to these issues. The core of the objection concerns discovery from Moler's cellphone of information related to the overall performance and "operation of the landfill." Id. The County and Moler assert that the order is erroneous because it requires Moler to produce communications having "anything at all to do with operation of the landfill." Id.

In its thorough review of Judge Hoppe's rulings as to Topics 5-8, the court agrees with Minke that the County and Moler appear to have misunderstood the scope of these rulings. The County and Moler repeatedly state that they object to Judge Hoppe's order to the extent it compels Moler to search her personal cellphone and furnish communications which relate "in any way" or have "anything at all" to do with the operation of the landfill. Id. at 1-2. Judge Hoppe forthrightly explained that discovery concerning the subject of the operation of the landfill must be limited to documents or communications related to the "management of the landfills and the overall performance of operations of the landfills, i.e., whether there were problems or whether things at the landfills were going well." ECF No. 59, at 1. Further, because it is undisputed that Moler used her personal cellphone for work-related matters, Judge Hoppe's order correctly extended discovery to cover relevant communications and

documents found on the device in question. In short, Judge Hoppe expressly tailored his discovery order to be limited in time and subject matter relevant to Minke's employment and termination. The court is unpersuaded that Judge Hoppe's ruling as to Topics 5-8 sweeps as broadly as the County and Moler contend.

Furthermore, as to the contention that information about the operation of the landfills is irrelevant, Judge Hoppe explained that such information concerns "significant issues in the case," a finding with which the court agrees given a number of assertions made in the County's answer, ECF No. 5, to Minke's complaint. See, e.g., ECF No. 6, at 1 (denying that Minke had been a "top performer" and stating that "[i]n fact, plaintiff had been disciplined and counseled on numerous occasions . . ."); id. at 2 (denying Minke's claim that her promotions were due to her "good performance"); id. at 4 (denying that Minke, as stated in the complaint, ECF No. 1, at 5, "performed her duties in a competent and satisfactory manner"); id. at 6 (stating that "plaintiff has 'cherry-picked' some parts of her performance evaluation to make it appear that her evaluation was better than it actually was in actuality"); id. at 7 (stating that Minke was termination due to her "poor management style and issues which she had with accurately conducting her work"); id. at 8 (stating the Minke was removed from supervising others "since she was not skilled at doing so"). It is pellucidly clear that despite claiming that Minke was fired due to a "lack of inter-personal skills" rather than her mismanagement of the landfill from a "technical standpoint," information regarding the latter is relevant to, inter alia, assessing the legitimacy of the County's claim regarding the former.

It is clear both that Minke intends to assert her performance as evidence of unlawful discrimination and retaliation, and that the County appears poised to dispute Minke's

performance-related claims. Under these circumstances, it simply cannot be said that discovery concerning the performance of the "management . . . . and overall performance" of the landfills she supervised is irrelevant. Indeed, information pertaining to the "management" and "overall performance" of the landfills in question directly bears on claims and defenses related to Minke's own performance as supervisor. This information likely speaks to Minke's managerial effect on the landfill and whether she was meeting the operation's metrics, goals, and standards. Judge Hoppe's order acknowledges as much, expressly stating that "Minke's individual performance would have some correlation to the overall operational performance of the landfills." ECF No. 59, at 4. Moreover, the court agrees that insofar as the County intends to call witnesses to testify about Minke's performance and alleged shortcomings as a supervisor, discovery related to such issues is appropriate. See ECF No. 63, at 5.[3]

In short, because Minke's performance as landfill supervisor is clearly at issue in this case, information related to the performance of the landfill itself is necessarily interrelated and inextricable from the claims, defenses, and theories of this case. Therefore, Minke is entitled to develop information related to the performance of the landfill per the terms of Judge Hoppe's order through discovery. Lastly, as to the allegation the Judge Hoppe's order would potentially result in disclosure of "proprietary or sensitive information" about the operations of the landfill and its relationships with outside contractors, the court finds that such concerns are overblown and, in any event, sufficiently mitigated by the protective order in place in this case to handle disclosures that a party contends are confidential. There is nothing "clearly

---

[3] Minke notes that the County has indicated in its initial disclosures that many of its witnesses are identified as "knowledgeable about plaintiff's performance and performance issues, dissatisfaction with regard to the manner in which plaintiff performed her job," etc. See ECF No.63, at 5.

erroneous" or "contrary to law" in Judge Hoppe's ruling as to Topics 5-8. The County and Moler's objections are **OVERRULED**.

## B.

The second major objection to Judge Hoppe's June 7, 2019 order relates to Topic 9, in which Minke requested all communications and electronically stored information from March 1, 2017, to June 30, 2017, between Moler and Pamela Emmons ("Emmons") relating to Minke, her job performance, the elimination of Minke's position, and "work at the . . . landfills." See ECF No. 59, at 5. Judge Hoppe's order notes that Emmons was an outside contractor for the County involved in supervising the construction of a new cell at one of the landfills during the period from March to June 2017. Id. Judge Hoppe also noted that during that time, Emmons expressed concerns about Minke's conduct and that on at least one occasion, Emmons texted Moler relaying such concerns. Id. Judge Hoppe held that to the extent Emmon's concerns may have contributed to the decision to eliminate Minke's position, "[c]ommunication of any such information to Moler may be relevant . . . ." Id.; see id. at 3 (noting that Moler and the County concede that Moler communicated with Emmons via text message about Minke's job performance and matters at the landfill). Judge Hoppe noted that because "Emmon's professed concerns about Minke [likely] developed over some time," Minke's request for communications during a four-month period is a "reasonable approximation" of events that perhaps gave rise to those concerns. Id.

The County does not object to the timeframe provided in Judge Hoppe's ruling on Topic 9, but objects to the extent the order requires Moler to release all texts or documents in applications on her cellphone which relate "in any way" to Minke or performance of landfill

operations. The County also notes that it already provided a text message exchange between Moler and Emmons relating to a meeting request to discuss issues with Minke's performance in 2017. The County otherwise "incorporate[d] all . . . objections noted to Topics 5 through 8" claiming that the order to release additional text messages and documents is overly burdensome and seeks information irrelevant to this case. Here, once again, Judge Hoppe's ruling on Topic 9 is narrower than the County's objection suggests. Judge Hoppe expressly held that as with Topics-5-8, "the scope of the work at the landfills should be narrowed to overall performance of operations at the landfills." ECF No. 59, at 5. The distinction between Judge Hoppe's order and the County's interpretation of it is that the order calls for production of text messages, etc., related to "overall" performance rather than text messages "in any way" related to the performance of the landfills. In other words, the assertion that Judge Hoppe's order broadly and unreasonably requires Moler to produce communications related "in any way" to Minke or the landfill is simply inaccurate. Moreover, it is plainly the case that insofar as the County intends to rely on Emmons' alleged complaints about Minke in justifying her termination, Minke is entitled to conduct discovery as to Moler's knowledge of events occurring at the landfill, including, Minke's alleged "efforts to keep the contractors on task during what [she alleges] was a crucial phase in the construction of a new cell at the landfill." ECF No. 63, at 11.

The court further agrees with Minke and Judge Hoppe that what Moler knew about Minke's conduct and the complaints she received from Emmons clearly implicate several aspects of the expected claims, defenses, and theories in this case. The court finds that Judge Hoppe affirmatively recognized the County's concerns about overbroad discovery and

9

circumscribed the scope of the language contained in Minke's subpoena as to Topic 9 accordingly. For the foregoing reasons, the court finds nothing "clearly erroneous" or "contrary to law" in Judge Hoppe's ruling as to Topic 9. The objection to Topic 9 is therefore **OVERRULED**.

## C.

The third major objection concerns the production of health-related information contained in Melissa Higginbotham's personnel file from 2010 to 2014. Judge Hoppe noted that Higginbotham, among others, was identified by the County as a former employee and potential witness at trial who reported concerns about Minke's allegedly problematic workplace conduct in 2014. See ECF No. 59, at 5 (citing ECF No. 46-1, at 1-8). More specifically, Higginbotham reportedly filed a grievance against Minke alleging mistreatment and that her health was adversely affected by her interactions with Minke. Judge Hoppe cites a bevy of cases supporting his ruling that Minke may obtain certain information in Higginbotham's personnel file. Id. at 6. Judge Hoppe noted: "[c]onsidering the claims and defenses in this case, information in a non-party's employment file may be relevant if it is related to Minke's work performance[,] her supervision of others, including disciplinary action she initiated or had some involvement in[,] and information that an employment left his or her employment . . . , voluntarily or by termination, or discussed doing so because of Minke, during the period of January 1, 2016, to June 21, 2017." Id. at 7.

Judge Hoppe further noted that "[i]nformation about Minke's conduct or the effect of her conduct on others that occurred before 2016 may also be relevant if [the] County intends to introduce evidence about it." Id. Judge Hoppe held that the information at issue, including

the existence and extent of Higginbotham's health issues, is "potentially relevant to Minke's job performance and her co-workers' abilities to work with her, which are central issues in this case." Id. Judge Hoppe held that the "full scope of Higginbotham's complaints about Minke are thus at issue in this case," and although "medical information is particularly sensitive," insofar as the County apparently intends to defend against Minke's claims by relying on Higginbotham's contentions that Minke's workplace conduct harmed her health, Minke is entitled to all relevant information to oppose such contentions. Id. Judge Hoppe's order requires the County to produce all information from Higginbotham's personnel file relating to Minke and Higginbotham's grievance against her, as well as Higginbotham's "medical information from 2010 to 2014." Id.

The County objects to producing health-related information in Higginbotham's personnel file, originally claiming that the request was overbroad and invades Higginbotham's privacy interests. The County first notes that "[w]hile it is true that Ms. Higginbotham filed a grievance claiming that Minke's behavior caused her health problems," it will, as directed by Judge Hoppe, provide a copy of that grievance and related documents detailing Minke's behavior and its deleterious effect on Higginbotham's health. ECF No. 61, at 2. However, the County asserts that for Judge Hoppe to have gone "one step further and opened up Ms. Higginbotham's personal medical records to scrutiny by Minke" is "clearly erroneous." Id. The County contends:

> The fact of the matter is that it makes no difference what health condition Ms. Higginbotham suffered from or how it changed over time. The only thing pertinent to this case is whether Ms. Higginbotham made the allegation that Minke negatively affected her health. That information can be found in the grievance related materials without subjecting Ms. Higginbotham to having

11

> her medical records disclosed to Minke. It is clearly erroneous for
> Judge Hoppe to have ruled otherwise.

Id. at 3. Minke asserts that because the County "is contending that Higginbotham's statement [regarding the adverse health connected to Minke's treatment of her] had merit, the medical records are relevant and necessary," as the "timing and nature of Higginbotham's various conditions . . . will bear on the sincerity of [d]efendant's current reliance" on her grievance against Minke. ECF No. 63, at 13.

The court concurs with Judge Hoppe's ruling that the medical-related information in Higginbotham's personnel file is squarely at issue in this case and, as such, is discoverable. Minke is correct that to the extent the County intends to rely on Higginbotham's grievance, and to the extent that grievance alleges that Minke's conduct resulted in adverse health consequences, Minke is entitled to discovery on this issue. Minke is also correct that the sincerity of Moler's reliance on Higginbotham's grievance and concomitant allegation of adverse health consequences as a result of Minke's conduct depends to some extent on the context in which said grievance and allegation arose and are framed. Further, and notably, Minke does not seek complete medical records from Higginbotham's health care providers, but instead seeks only health-related information contained in her personnel file in the possession of the County. In short, the court is unpersuaded that Higginbotham's health-related information in her personnel files does not come within the broad scope of relevance as defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. The court finds the information at issue contained

in the County's personnel files relevant to Minke's claim that the reasons proffered for her

termination were pretextual.[4] The County's objection is **OVERRULED**.

An appropriate **ORDER** will be entered.

Entered: 07-29-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

[4] Judge Hoppe noted that the need for potentially sensitive information in the personnel files of those who complained about Minke outweighs the non-party employees' privacy concerns so long as the information is produced under the protective order entered in this case. ECF No, 59, at 7 (citing Armitage v. Biogen, Inc., No. 1:17cv1133, 2019 WL 79037, at *5 (M.D.N.C. Jan. 2, 2019)).